UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ADRIAN KAWUBA<br><br>Defendant | No. 23-cr-10012-WGY |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States respectfully submits this memorandum regarding the sentencing of the defendant Adrian Kawuba, which is set for April 10, 2024.

The defendant pleaded guilty to four counts of wire fraud, in violation of 18 U.S.C. § 1343. In short, from about 2018 to 2022, the defendant perpetrated a Ponzi scheme through which he obtained investments from friends, family, and other persons, purportedly to fund youth soccer projects and events in Africa and elsewhere. He did not invest any of the money he obtained. Instead, he spent it and used money from later investors to pay purported returns to earlier investors. The defendant's fraud ultimately collapsed because he could not get enough new victim money to pay earlier victims. In total, he obtained over $2.2 million from victims and kept at least $625,000.

The government asks this Court to sentence the defendant to 27 months of incarceration, 36 months of supervised release, and no fine, given the need for restitution. The government also asks the Court to order $2,288,440 in forfeiture and $625,006 in mandatory restitution to the victims identified in the Presentence Investigation Report ("PSR"), dated April 3, 2024.

### OFFENSE CONDUCT[1]

Starting in 2018, Kawuba stole money from friends, family, and acquaintances by telling

---

[1] The defendant did not object to the PSR.

1

them that he could invest their money in short-term youth soccer and entertainment projects, principally in Africa. (PSR ¶ 8.) The email below captures the essence of his fraudulent pitch.

> Subject: Company One Pager
> From: Adrian Kawuba
> Date: 7/7/2022, 1:18 PM
> To:
>
> Hi ,
>
> It's Adrian (from Gables). Hope you and the family had a great long weekend!
>
> Attached please find the one pager to give you some context of what I'm working on. Currently I originate, underwrite and executive short-term, high-yielding alternative lending deals within soccer as a way to build up my capital base generating strong uncorrelated returns for investors, friends, family offices and lenders who co-invest with me on a deal-by-deal basis using a simple note structure. To date, I've financed 30 deals (with no defaults) lending against top-tier contracts, receivables, guarantees/and/or cash, real-world physical assets and other assessable cashflows. Each deal comes with a personal guarantee from me to protect my investors/lenders' downside for helping to fund current and growing deal flow. At the moment, I had a time sensitive, short-term 3-month, 15% yield deal with a minimum check size of $20K (max of $50k) if there was any interest and comes with a personal guarantee as well. Happy to share more.

(PSR ¶ 9.) Attached to the email above was a document that described Kawuba as a philanthropist heading a large team focused on youth sports.

> **TEAM/EXPERIENCE**
>
> Driven by a passion for the game, our team, led by founder, Adrian Kawuba, is a group of proven, motivated and deeply committed professionals who have spending their entire lives and careers in football/soccer. We have been players, head coaches, directors, agents, scouts, execs, facility/academy/youth club owners and operators and more. We've built a track record of success across the entire soccer value chain and bring a global network of relationships as well as as deep expertise and insight into our areas of focus and channel that knowledge into every opportunity. We also have backgrounds in traditional finance, management consulting, tech & investments. We aim to actively support, add value to and improve performance of our portfolio to ensure long-term success.

None of this was true.

Instead, Kawuba got money from investors, spent it, and then got new money from new investors to pay the earlier investors, and around and around the scheme went until it collapsed. (PSR ¶ 10.) The defendant told his victims that their money would go to "short-term capital needs of youth sports businesses" or to "financing solutions to soccer clubs for their transfer market transactions and deals" or to "private sports financing deals." (PSR ¶ 10; *see also* Indictment ¶ 15.) Kawuba lulled

his victims with his purported good character and a "personal guarantee" that the victims would lose no money. (PSR ¶¶ 8, 11.) The victims believed him because he seemed genuine. It was a fraud built on Kawuba's personal magnetism and apparent good faith. Below is an example of the defendant's description of one of his purported deals.



In this manner, the defendant preyed on his friends. Investor 2, for example, was the defendant's friend from college, and Kawuba lured his friend into ever larger investments. (PSR ¶¶ 10, 14.) As the defendant noted in his email above, Kawuba also exploited Investor 2 by using him to recruit new victims into the scheme. (PSR ¶ 14.)

When the scheme began to collapse, the defendant resorted to ever more extravagant lies. For example, in June 2021, when an investment made by Investor 2 was due, Kawuba told the victim that the investment had been a success and convinced Investor 2 to roll over and reinvest his investment return of $240,000. (PSR ¶ 14.) In fact, that $240,000 never existed. (*Id.*) Later, Kawuba spun out tall tales of having up to $15 million in his bank account that he could not access due to some sort of banking snafu. (PSR ¶ 15.) To trick his investors, Kawuba created false images of his balance in his online bank account. (*Id.*) In fact, when he told his victims that he had millions in assets, his bank account was overdrawn. (PSR ¶ 16.)

But sometimes, the lies were simple. For example, in October 2022, Investor 1, who invested $60,000 in February 2021, wrote to Kawuba:

> I did not honestly think you would ever deceive or fraud me. Yet here I am, feeling like a victim of fraud and deception from you. Especially after knowing the intention of my very hard-earned money, to purchase a home for my mother. You ignore my messages, and the few times you have responded it is to say you've made an appointment to send the wire - but the wires have never arrived. . . . Throughout the time you stated you were not well, I always reached worrying about your health. I believed that all business conversations would be handled later. But ever since you mentioned you recovered and are back at work, you have not prioritized me nor following through our various agreements which total US $90,000.

Kawuba responded, "Very Sorry for a late response. You're money [is] coming. Wires are just a bit delayed. . . . I would never do such a thing. Ever." *See* Exhibit A. In fact, the defendant had done such a thing, to no fewer than 25 victims. (PSR ¶ 19.)

Kawuba's Ponzi scheme, like all such schemes, was doomed because he could not get enough new victim money to pay out earlier victims. (PSR ¶ 17.) But that did not stop the defendant from trying, and he continued to try to scam new victims up to the time of his arrest. (PSR ¶¶ 17-18.)

## APPLICABLE GUIDELINES

The parties agreed that the defendant's offense level under the United States Sentencing Commission Guidelines is 18. *See* Plea Agreement ¶ 3. United States Probation reached the same conclusion. *See* PSR ¶ 35. The government agrees with, and adopts as consistent with the Plea Agreement, the guideline calculation in the PSR. *See* PSR ¶¶ 23-35.[2]

## FORFEITURE[3]

Forfeiture is mandatory in this case. *See* 28 U.S.C. § 2461(c). The funds subject to forfeiture are all the monies that the defendant personally obtained, directly or indirectly, from the wire fraud scheme. *See* 18 U.S.C. § 981(a)(1)(D)(vi) and (E). Because the defendant perpetrated a Ponzi

---

[2] The defendant admitted the pertinent sentencing enhancements at his Rule 11 hearing.

[3] On April 3 and 4, 2024, the defendant, through counsel, provided the government with information that led the government to revise the calculations in the PSR.

scheme, the proceeds subject to forfeiture are the full amount the defendant obtained, "not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). Here, the total amount of criminal proceeds obtained by the defendant was $2,288,440. *See* Aff. of FBI Forensic Accountant Rebecca Curtin, attached. Accordingly, the government asks for an order of forfeiture in that amount.

## RESTITUTION

Restitution to victims of wire fraud is mandatory and may not be offset by forfeiture. 18 U.S.C. § 3663A(a)(1) and (c)(1)(A)(ii). As detailed in the attached affidavit from an FBI accountant who reviewed the defendant's bank records, the defendant obtained $2,288,440 in investment principal from victims, paid back $1,752,924, and left his victims with $625,006 in actual losses.[4] The chart below lists the victims due restitution and the amounts claimed.[5]

| Initials | Loss |
|---|---|
| ZR | $29,750 |
| SA and AA | $90,000 |
| HS | $150,000 |
| CH | $84,980 |
| CC | $85,600 |
| AK | $89,800 |
| LL | $35,000 |
| SK | $27,000 |
| TB | $5,126 |
| EM | $8,000 |
| VM | $4,350 |
| BD | $5,000 |
| AM | $2,300 |
| DL | $800 |
| JM | $3,000 |
| VM | $2,300 |
| PN | $2,000 |
| **Grand Total** | **$625,006** |

---

[4] Some victims came out ahead, as is typical in Ponzi schemes. The government has not offset losses to victims with profits obtained with other victims. The actual loss is less than the intended loss in this case. The intended loss includes $240,000 in purported re-investment.

[5] This chart differs from the PSR based on information received from the defendant on April 3 and 4, 2024.

The government asks that the Court also award pre-judgment interest to compensate victims for the lost time-value of money. The government asks that the interest rate be the average federal funds rate.[6]

## SENTENCING RECOMMENDATION

For the reasons stated below, the government recommends that the Court sentence the defendant to 27 months of incarceration, 36 months of supervised release, and no fine, given the need for restitution. The Court should order $2,288,440 in forfeiture and $625,006 in mandatory restitution to the victims of the fraud scheme.

Adrian Kawuba should have lived the American dream. He comes from a loving and supportive family that immigrated from Uganda to the United States, looking for a better life. (PSR ¶¶ 45-48.) They found it. The defendant did well in school and forged friendships through soccer. (PSR ¶ 45.) He went to a good college and graduated with honors with major in business administration and minors in economics and French. (PSR ¶ 56.) And he was a tremendous soccer talent, who found a way to use his skill to help youth in and around Boston. (PSR ¶¶ 56, 59, 61.)

But it all went wrong when he turned to fraud. There are no mitigating factors in this defendant's history that are not also aggravating factors. With the benefit of family, community, education, and economic opportunity, he still chose to steal, and for victims, he chose his friends and people in his community.

The defendant's fraud scheme, like all Ponzi schemes, was insidious because it necessarily contemplated an ever increasing number of victims. Once a fraudster goes down the Ponzi road, the way forward has to involve stealing from new victims. That is the only way the scheme can continue, and it is the only way to keep from getting caught. Ponzi schemes are among the most serious and

---

[6] If the Court awards pre-judgment interest, the government, with the Court's permission, will provide a supplementary filing with totals including interest.

dangerous of fraud schemes because they multiply harm.

Kawuba's scheme also preyed upon investors' altruism. This was not a fraud in which investors simply chased high returns. Rather, the defendant led his victims to believe that their investments were funding soccer and sports programs for children in developing countries. It was feel-good investment that led to financial disaster.

And the harm goes beyond the financial. Victims in this case suffered fear, anxiety, strain on family, and loss of confidence and self-esteem. Kawuba's crime was not just a fraud. It was, as one victim has put it, a "betrayal" that shook the victim's whole life.

The public needs to be protected from further crimes by this defendant, and the sentence imposed needs to deter Kawuba from any new fraud schemes. The defendant perpetrated this crime over a multi-year period with multiple victims. He defrauded victims even though they were his friends, or the family of his friends, or members of his community. The ordinary social bonds and affections that might cause a person to hesitate in committing a fraud—or to stop—did not stop Kawuba. Instead, he carried on. By the summer of 2022, the defendant had been defrauding his friends for years. He knew that his scheme was a bust, but he doubled-down and tried to get new investor funds from neighbors and others in the Ugandan immigrant community. This is a defendant who needs a sentence that will cause him to stop before ever stealing again.

The government recognizes and understands that this defendant has meaningfully accepted responsibility and wants to make amends. It is a laudable instinct that may indicate that he has taken a step toward rehabilitation. That step is not enough, and his crimes call out for just punishment.

The Court should impose the sentence recommended by the government to recognize the seriousness of his conduct and the need to promote respect for the law, both from Kawuba, and from the victims he harmed.

        Respectfully submitted,

        JOSHUA S. LEVY
        Acting United States Attorney

By:   /s/Kriss Basil
        KRISS BASIL
        Assistant U.S. Attorney

**CERITICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

By:   /s/Kriss Basil
        KRISS BASIL
        Assistant U.S. Attorney