UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No. 1:23-cr-10012-WGY |
| | ) | |
| | ) | |
| ADRIAN KAWUBA | ) | |

## Sentencing Memorandum

Adrian Kawuba comes from a modest and hard-working immigrant background. He had accomplished many significant achievements in his life before veering significantly off-course when he engaged in the criminal behavior at issue in this case. He accepts full responsibility for this offense, comprised of four counts of wire fraud. He is committed to paying restitution to each of the victims involved. Recognizing the level of esteem and support he had in the community (and still retains), Mr. Kawuba feels enormous shame for his behavior, and the impact his actions have had on the victims in his case. Mr. Kawuba was never in any kind of criminal trouble before. Rather, he worked hard to make his parents proud. Reflecting, he states:

> I write to you today with a heavy heart and a profound sense of remorse as I await my upcoming sentencing. I am acutely aware of the gravity of my actions and the pain and disappointment they have caused to so many individuals, including those directly affected by my wrongdoing, my loved ones, and the community at large…I want to begin by expressing my sincere regret for the choices I made during a dark period in my life. I take full responsibility for the harm I have caused, and I am committed to making amends and rebuilding trust in the community. Letter from Mr. Kawuba, filed as Exhibit K.

Mr. Kawuba agrees that the advisory guideline range in this case is properly calculated at 27-33 months, with $628,506 owed in restitution. However, a fair balancing of the 3553(a) factors warrants a sentence below the advisory range. Mr. Kawuba asks that the Court impose a sentence of time-served, followed by the maximum period of 3-years supervised release, during which <u>the first 12 months will be served in home detention</u>; restitution owed. In addition to the proposed special

conditions of supervised release, the conditions should include directives to complete a Restorative Justice program and mental health counseling.

Mr. Kawuba is not a citizen of the United States, but a lawful permanent resident. This conviction will likely result in his removal. Confining Mr. Kawuba to the community presents the best opportunity for meaningful restitution payments to occur. At the same time, it would permit Mr. Kawuba to attend to his family including his ailing father who is fighting cancer.

Such a sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

      I.      <u>History and Characteristics of Adrian Kawuba, and the Nature of this Offense</u>

The Presentence Report describes Mr. Kawuba's background and the important role his family had in his upbringing and the close relationship they maintain today. Adrian Kawuba was born in Nsambya, Uganda in 1989, the middle child of three boys. His parents raised their children in tough economic circumstances in Uganda in the early 1990's. After struggling in an unstable economy and environment, his parents determined to move the family to the United States to seek more educational and employment opportunities for their children. Adrian was twelve years old at the time. The adjustment to living in the United States, on the cusp of adolescence, was a challenge for Mr. Kawuba. His early memories of living in the United States included a struggle to fit in with his classmates, and a feeling of being "other" due to his accent. His parents were determined to give their children the best educational opportunities, and enrolled Adrian in private school despite modest means. Adrian focused his attention on schoolwork and soccer, and had a loving relationship

with his parents and siblings. PSR ¶ 45. The letters of support describe someone who has inspired others, has a positive spirit, and would do anything to help others in need.

> Growing up, we shared a bedroom and there is not a single night that went by without Adrian reminding me of the importance of working hard if I am to achieve my full potential. He pushed me every single day to be my very best and if you look at the ceiling of our childhood bedroom today, it is full of inspirational quotes, handwritten by Adrian all about the importance of working hard if one is to achieve their life-long dreams. Nothing has changed today because every time we speak, Adrian doesn't stop reminding me of the importance of hard-work and he does the same with my other brothers and cousins. Exhibit F, letter from brother.

Mr. Kawuba graduated high school in 2007 after being selected as a team MVP and All-League and All-Scholastic his senior year. He began college at Drew University in New Jersey, and was welcomed to the soccer team as a freshman, starting in 13 out of 22 games that year. Soccer became his world – a place where he felt confident and free.



*Mr. Kawuba while playing for Drew University.*

Off the field, Mr. Kawuba achieved similar success. He earned a spot on the Dean's list all semesters, and was inducted into the French Honor Society his senior year. Mr. Kawuba proudly graduated cum laude with a Bachelor of Arts in Business Administration in three years, excelling in both academics and in collegiate sports. He was selected as a member of the National College Soccer Coaches Association All-Region Team and awarded a certificate for Men's Soccer First-Team All-

Conference. PSR ¶ 56. Playing soccer was a dream come true for Mr. Kawuba. In the years that followed, as his soccer dreams faded, he began to lose his footing.

Though it appeared that Mr. Kawuba had the world ahead of him and many opportunities, Adrian internally struggled following graduation. His first year out of college Adrian spent playing professional soccer for the Uganda national team and with the Pittsburgh Riverhounds Soccer Club in the United Soccer League.[1] His signing was proudly announced by Drew University:

> **Kawuba Signs Professional Soccer Contract**
>
> PITTSBURGH, Pa. (February 16, 2011) - Drew University men's soccer player, Adrian Kawuba **(Watertown, Mass./Lexington Christian Academy)**, was signed by the United Soccer League's Pittsburgh Riverhounds yesterday. He becomes the second player in the program's history to play professionally.
>
> As a senior, Kawuba had his best season in a Ranger uniform. He started every game in his final year in Madison and received All-Conference honor for the first time in his career. He scored a total of six goals and added six assists, both ranked in the top 10 in the Landmark.
>
> "My four years at Drew have helped me develop as an all-around player and gave me the chance to reach the goal I have strived for since day one," said Kawuba.
>
> Known for his tremendous ball skill and accurate touch, he often served as the catalyst for the Landmark's most dynamic offense. Kawuba was also Head Coach Lenny Armuth's go-to man on penalty kicks. In 2010 he was a perfect 4-for-4, including an overtime PK to defeat cross street rival Fairleigh Dickinson.
>
> "Adrian is one of the hardest workers on our team not only during the season but year round," said Head Coach Lenny Armuth. " This has been his goal since arriving at Drew and he worked hard for four years to get this opportunity".
>
> Kawuba foresees great things to come and will use a similar strategy that helped him become successful at Drew.
>
> "I will work hard in preseason to hopefully have a chance to compete for a starting position," said the eager Kawuba.
>
> Kawuba went out to Pittsburgh on Wednesday afternoon with his father to make it official.The Riverhounds open the 2011 season on April 9th when they travel to Richmond to take on the Kickers.

In spite of his best effort, Mr. Kawuba struggled, earned little actual money, and could not fulfill his greatest dream. His anguish at the lack of success led to a period of being unmoored and unsettled.

Mr. Kawuba's course of studies had focused on economics and business administration, and he used this background to give advice to friends and family, who in turn began to rely on his advice.

---

[1] The Pittsburgh Riverhounds SC play in the United Soccer League's Championship Division, which is one tier below Major League Soccer (MLS) which includes teams like the New England Revolution. Though the Riverhounds would be independent and not an affiliate of any MLS team in the way that minor-league baseball teams are organized, this would be the rough equivalent of being signed by the Worcester Red Sox.

He felt a pressure to succeed, make his parents proud in the way that he had his whole life, and to feel a sense of accomplishment himself.



*Mr. Kawuba with his proud parents on senior day at Drew University*

He had high hopes of developing his own organization to help others, and often brainstormed ideas that could combine business with doing good in the community.  As he turned 25 years-old, he channeled his interests and skills into developing an organization to help youth soccer He ran a coaching and mentoring program that positively impacted the community and individual kids. See, Exhibit B, letter of support from his mother Rose Kiggundu. He supplemented that work by coaching soccer at Brighton High School.

Privately though, Mr. Kawuba battled deep-set insecurity and depression. His hard work hadn't achieved his dream in the way he always thought it would. Mr. Kawuba's concealed his internal feelings of insecurity from others including his family, because in his mind, he couldn't let them down. He needed to achieve great success, not just modest success, to continue to be who he was before. Nevermind that his family would have loved him no matter what he did. His younger brother has always viewed his brother as a steadfast source of support and a role model:

> From my earliest memories, Adrian has been more than a brother to me; he has been a source of inspiration, guidance, and support. Growing up, he set the bar high for me academically

and athletically, pushing me to achieve my full potential. Our strong bond, forged on the soccer field, transcended mere sibling camaraderie. Adrian was not just my trainer and coach; he was my mentor, my confidant, and my steadfast supporter…Through the years, Adrian's influence extended far beyond our shared soccer endeavors. He dedicated countless hours to helping me with homework, tutoring me for the SATs, and attending my soccer games. Even in moments of personal struggle, such as my desire to leave Boston College when my athletic career took an unexpected turn, Adrian was there to impart invaluable lessons of resilience, hard work, and perseverance. His guidance shaped not only my academic and athletic pursuits but also my character and determination to overcome challenges. Exhibit A, letter of support from brother, Ado Kawuba.

Professional and international soccer is a billion dollar industry. Having still a deep passion for the game, Mr. Kawuba developed a keen interest in the business side of international soccer programs, players, and funding. He worked on projects including web page development, including for his own soccer coaching program. His family describes someone who had high hopes of success and was always pushing himself to succeed. His father recalls watching his son writing out business plans at the family table, and helping his brothers brainstorm ideas that could help them in their careers. See, Exhibit C. What his father did not see, because Mr. Kawuba concealed it, was that Mr. Kawuba remained riddled with self-doubt He found himself talking a "big game" to those around him, leading to a connection with his college friend who had the financial means to give an investment. Mr. Kawuba is especially ashamed that this was how all this chaos began, with the trust of his college friend.

As with many financial crimes before this Court, the reasoning behind Mr. Kawuba ignoring his values and committing such a crime can be difficult to reconcile and may seem contradictory at times. Against the backdrop of his family's support and expectations, Mr. Kawuba started down a disastrous road leading to his decision to solicit money from friends and a wider network of associates for the purported purpose of investing in these opportunities he dreamed about. As with his signing a professional contract, Mr. Kawuba was telling himself his hard work would yield the results he dreamed of. Mr. Kawuba reflects on this time in his life and the shame he feels especially

for the betrayal he committed towards friends who trusted him. He had many ideas about investment opportunities and projects that could lead to successful ventures. In his execution, he fell short in a large way.

> "In my desperation to feel worthy and avoid disappointment, I made choices that I knew were wrong but felt compelled to justify in the moment. The fear of getting in trouble after realizing I was dealing with extremely powerful people and the desire to belong in the circles I had been introduced to clouded my judgment, leading me down a path of deceit and dishonesty. I want to be unequivocally clear: there is no excuse or defense for my actions. I take full responsibility for the harm I have caused and the trust I have betrayed.
>
> One particular example that weighs heavily on my conscience is the betrayal of trust I inflicted upon Z.R. and C.C., individuals who entrusted me with their hard-earned money. ZR, a dear friend, consistently told me that the returns I provided were helping with his sister's medical expenses for cancer treatment, while C.C., another close friend, believed in my promises of financial growth. I allowed my desperation to avoid disappointing them to cloud my judgment, leading me to make choices that I deeply regret. I am profoundly sorry for the pain and disappointment I have caused them, as well as the financial losses they suffered due to my actions. I understand that my actions have consequences, and I am prepared to face them with humility and contrition." Exhibit K, Mr. Kawuba's letter to the court.

Success in the world of soccer that Mr. Kawuba strove for is often exhibited by material things as a measure. That is, those who achieve success often revel in it. Those that have not achieved success nevertheless need to appear to have that success by surrounding themselves in the trappings of success. By appearing successful, one can gain entry into circles that can lead to success.

Mr. Kawuba's family was shocked and devastated to learn that their beloved son and brother had been involved in this crime. Since learning of the offense, they have a shared commitment to helping their loved one confront his actions, and commit to repairing the damage he caused. Mr. Kawuba now spends his time reconnected with his family, and especially his parents. His most shameful moments are now out in the open – which has humbled Mr. Kawuba as he realizes that his family remains behind him, even though they reject his criminal choices. His father speaks very personally about the role his son has played in his life following his diagnosis with cancer:

> "Adrian's caring nature combined with his empathy for others has been instrumental in my healing journey from cancer. From when I was diagnosed close to four years ago, my son has

taken up a "carer" role, often spending immense amounts of time with me either in person or over the phone. Practically, he has driven me to my doctors and chemo appointments, patiently waited in waiting rooms, picked up my prescriptions etc. However, his emotional support has been the most important ingredient as I fight this battle. Because of his charismatic and positive outlook to life, Adrian has constantly reminded me not to give up and to keep fighting. Through our deep conversations, he has challenged me to think about how I can turn my current situation into a force for good, particularly for society. He often asks me what life-lessons this situation has taught me and what him and his siblings can take away." Exhibit C.

Mr. Kawuba's behavior in this offense is starkly out of line with the way that he has lived his life in every other aspect – where he has shown empathy, positivity, resilience, and commitment to hard work. He will now carry the consequences of these actions for the rest of his life as a convicted felon whose wrongdoing will remain at the top of any Google search.

II.     Nature of the Offense

The nature of the crime is described in great detail in the Presentence Report. Briefly, Mr. Kawuba offered very high rates of returns for short-term investments. He quickly fell behind and was essentially struggling to repay the first investors from the onset.

He accepts responsibility – he committed these acts, soliciting funds from friends for the purported purpose of short-term investments and providing returns. He spent some of the money on himself, gifts, and travel. He spent some of the money repaying previous investments with additional returns. He wanted to be seen as someone who could make money for his family and friends. Before he knew it, he was in well over his head and scrambling to make people whole again. Stubbornness, pride, a desire to be a part of the circles capable of making these kinds of investments – all of these factors were at play with Mr. Kawuba. A period of intense insecurity and snowballing choices led Mr. Kawuba extraordinarily far away from the moral compass he was raised with. Kawuba's offense has undoubtedly caused financial harm to many individuals who trusted him. Kawuba acknowledges the suffering he has caused.

Mr. Kawuba's oldest brother reflects on how this has affected their family and their plan to help Mr. Kawuba repair and remain accountable for his actions, through continued service to the community, therapy, and repairing the damage he's caused.

> "As a family we have all committed to support Adrian emotionally through family meetings to discuss progress but to also have open dialogue and communication about feelings and experiences. Because of Adrian's commitment to stay involved in community initiatives, we will continue to encourage him to participate in local service projects such as the ones he continues to engage in every Saturday together with our mother and younger brother, Adolph. We will all leverage our networks to connect him with mentors within the community to continue providing counsel. We have committed to collaborating on goal setting and keeping him accountable on progress against his personal goals as well as personal development following this incident. We will encourage him to participate in therapy and healing sessions and to ensure we as a family come together to engage in family therapy and accountability sessions. Accountability is a an extremely important aspect that we are taking very seriously Your Honor. We will continue working with Adrian on an accountability plan and more importantly track its implementation as a family. As a family we have set out clear expectations from Adrian and we commit to making him accountable for positive behavior…"
> Exhibit F, letter from oldest brother.

Mr. Kawuba's acceptance of responsibility is not only demonstrated through his plea to the charges in the indictment, but in revealing to his family that he committed this crime. The devastation that this news caused his family is something that Mr. Kawuba continues to carry and grapple with, as well as the disappointment to his friends and the victims in his case. He remains focused on repairing the damage he has caused by paying restitution to each victim involved in this case.

### III.    Determining the Sentence Guidelines and 3553(a) Considerations

While the Guidelines are only one of a number of factors properly considered at sentencing under 18 U.S.C. §3553(a) and cannot be presumed to be reasonable, they are the starting point in determining any sentence. *See Gall v. United States*, 552 U.S. 38, 49 (2007). Nonetheless, as the First Circuit stressed, the Supreme Court ruling in *Kimbrough* requires a "more holistic inquiry" than simply plugging numbers into a guidelines calculation, and that "section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the

thread of an overarching principle." *United States v. Yonathan Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008) (citing *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007)). That overarching principle is to "impose a sentence sufficient but not greater than necessary." *Id.* In reaching a decision on what constitutes an appropriate sentence, the district court should "consider all the relevant factors" and "construct a sentence that is *minimally sufficient* to achieve the broad goals of sentencing." *Id.* (emphasis added).

A. Guidelines

In any case involving financial harm, the guidelines are primarily driven by the loss amounts Here, the parties agree on the proper guideline calculation, based on the total loss amount over $550,000 and less than $1,5000,000 (with adjustments for repayment and proper accounting of these payments, restitution is approximately $625,000.) See PSR ¶ 19. The advisory guideline range is properly calculated as a total offense level of 18, with a criminal history category I (zero points), resulting in a range of 27-33 months. The parties are finalizing the appropriate amount for restitution, and anticipate an agreement on the date of sentencing.

B. Sentencing considerations beyond the Guidelines

As this Court is well aware, the analysis does not end with the guideline calculation. As in all sentencing proceedings, the Court's determination comes down to deciding what punishment is fair, necessary, and appropriate, given all of the relevant facts and circumstances; or, in the words of 18 U.S.C. § 3553(a), establishing what sentence is "sufficient but not greater than necessary" to serve the sentencing goals enumerated in that statutory section. In determining the sentence in this case, the Court must fashion a sentence that satisfies the four needs a sentence must fulfill. Put simply, those needs are: punishment, deterrence, incapacitation, and rehabilitation. *See* 18 U.S.C. §3553(a)(2). In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the

defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. See 18 U.S.C. §3553(a)(1)–(7).

Here, based on a totality of circumstances, including a fair balancing of the sentencing criteria, a just sentence does not require time locked up in prison. Rather, a just sentence can incorporate significant restrictions in the community, an opportunity for repair towards those harmed, protection of the public through conditions of supervised release, and a focus on rehabilitation and corrective programming for Mr. Kawuba. The requested sentence including 12 months of home detention, restitution, restorative justice, and mental health support, satisfies these requirements.

The first prong of 3553(a)(2) is about punishment. Time locked in a prison is certainly one way to afford punishment. However, it is not the only way to communicate and satisfy "punishment" to a particular defendant, and certainly not to this defendant A federal criminal prosecution and conviction is a significant consequence that in itself reflects how serious this offense is. Mr. Kawuba has never been in any kind of criminal trouble before: quite the opposite, he has overcome difficult circumstances as a child in Uganda, and worked hard in the United States as a young teenager and student in the American educational system. Based on his actions, Mr. Kawuba is a felon. He will face all of the permanent consequences that go hand in hand with being a felon. This is, in itself, a significant punishment, and addresses both the seriousness of the offense and a deterrence for Mr. Kawuba to never engage in this kind of behavior again. The Court need not be concerned that Mr. Kawuba will recidivate. He has accepted responsibility. He has admitted without reservation what he did. He will continue to be supervised by the United States Probation office in the community. Finally, the sentence will also come with a hefty order of restitution and forfeiture. These monetary penalties are an added, and significant, component of his punishment.

A sentence in the community is not a "light sentence" – but rather, holds Mr. Kawuba accountable and also allows for an opportunity for him to make amends during a period of supervised release. Courts have made it clear that probation is no easy sentence. Additionally, the direct consequences of the conviction and sentence are significant sources of deterrence in this case. The Supreme Court has recognized that even purely probationary sentences are "significant" sentences:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. Most probationers are also subject to individual 'special conditions' imposed by the court.
>
> See *Gall v. United States*, 552 U.S. 38, 48-49 (2007).

The First Circuit recognized that jail time is not necessarily the only factor when evaluating deterrence in cases with high financial loss. Judge Stearns in imposing a sentence that did not include imprisonment, explained why the sentence satisfied the criteria of deterrence:

> "I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed."

See *United States v. Prosperi*, 686 F.3d 32, 48 (1st Cir. 2012).

An important consideration in a case like this is the need for restitution. 18 U.S.C. §3553(a)(7). Other courts, in cases similar to this one, have found the need to provide restitution to be an important enough factor to impose a sentence that does not involve incarceration at all. *See, e.g., United States v. Edwards,* 595 F.3d 1004 (9th Cir. 2010) (imposing sentence of 5 years probation

with seven months home detention where defendant was convicted of bankruptcy fraud and guidelines were 27-33 months because "the district judge recognized that restitution serves as a deterrent, and that [t]he term of probation imposed will enable [Edwards] to continue working in order to pay the significant amount of restitution he ow[e]s."); *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) (in case of embezzlement of $500,000, no abuse for court to depart downward by eight levels to probation in part because "a sentence of probation may have made Defendant better able to provide restitution to the victims of her crime, *see* 18 U.S.C. § 3553(a)(7)"); *United States v. Bortnick*, 2006 WL 680544 (E.D.Pa., March 15, 2006) (unpub.) (in eight million dollar fraud case where guidelines 51-63 months, one million dollar fine and sentence of seven days sufficient in part because "Defendant owes a substantial amount of restitution, which he will be able to pay more easily if he is not subjected to a lengthy incarceration period."); *United States v. Peterson*, 363 F.Supp.2d 1060 (E.D. Wisc. 2005) (where defendant pled guilty to defrauding bank of $80,000, court imposed sentence of one day in prison and supervised release of five years so defendant would not lose job and can pay restitution). Here, in a similar analysis, a sentence of confinement in the community will best allow Mr. Kawuba to work towards that goal of repayment to each victim on the list. Mr. Kawuba plans to continue to work with his brother's company, where is will be able to earn sufficient money to meaningfully contribute towards restitution, while living with his family. He will cooperate with the US Probation office to come up with a schedule for repayment.

The fourth purpose of sentencing is "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Mr. Kawuba's rehabilitation including completion of a Restorative Justice program to appreciate fully the circumstances of his offense; employment and repaying restitution; and mental health counseling, will best support him and to protect the community. These kinds of services will help Mr. Kawuba

return to his hardworking roots, and to help him deal with the anguish this has caused his family, including his father who is fighting cancer.

### IV.     Conclusion

This case reflects a period of terrible and criminal decision making by someone who has so much potential to bring good into the world and this local community. Adrian Kawuba is greater than the worst decisions he has made: he is capable of repair, of rehabilitation, and reconciliation. A sentence of incarceration represents a sentence that is "greater than necessary" to achieve the sentencing goals. A sentence that balances restriction in the community, but allows Mr. Kawuba to live with his parents and support his father, as well as work in the community and pay restitution, is a just sentence given all the circumstances at issue in this case.  As Mr. Kawuba writes this Court, "I am committed to making amends to my victims and the community, and to using my experience as a cautionary tale to educate others about the dangers of selfishness and dishonesty." Mr. Kawuba's letter to Court, Exhibit K.

        Respectfully submitted,
        ADRIAN KAWUBA
        By his Attorney,
        */s/ Cara McNamara*
        Cara McNamara
        BBO 712096
        Assistant Federal Public Defender
        Federal Public Defender Office
        51 Sleeper Street, 5th Floor
        Boston, MA  02210
        Tel: 617-223-8061

**CERTIFICATE OF SERVICE**

   I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 4, 2024.

                */s/ Cara McNamara*
                Cara McNamara